550 P.2d 115

**The STATE of Arizona, Appellee,**

v.

**Philip Lawrence HINKLE, Appellant.**

**No. 2 CA–CR 684.**

Court of Appeals of Arizona,
Division 2.

May 21, 1976.

Rehearing Denied June 23, 1976.

Review Denied July 20, 1976.

———◆———

Bruce E. Babbitt, Atty. Gen. by William J. Schafer, III, and R. Wayne Ford, Asst. Attys. Gen., Phoenix, for appellee.

John M. Neis, Pima County Public Defender by Frederic J. Dardis, Asst. Public Defender, Tucson, for appellant.

## OPINION

HATHAWAY, Judge.

Appellant was convicted of armed kidnapping and sentenced to 60 to 90 years at the Arizona State Prison.

His primary contentions are that the corpus delicti was not established before his statements were introduced, and that the evidence was insufficient to support the conviction.

The facts establishing the corpus of armed kidnapping are as follows. Appellant bought a pistol the day before the victim, Leslie Amos, disappeared. Leslie's 6 year old son answered the phone about 7:00 a. m. on June 29, 1974. A male voice that the boy could not identify asked for Mrs. Amos. The boy woke his mother. When she answered the phone, the man asked, "Is this Mrs. Amos?" Leslie told her boys she had to take a man down the street and would be back in 5 or 6 minutes. Although she invited them to go with her, they chose to stay home. About the same time, the apartment manager (who was the father of one of appellant's wives)[1] talked to appellant. The manager saw no weapon. He watched appellant walk behind Leslie on the sidewalk near her car. He did not see appellant get into her car. Leslie's body was found in Tijuana, Mexico three days later. She had been killed by a bullet from appellant's pistol.

Leslie had visited her mother and sister the night before she disappeared. She told them she was going to the circus with her estranged husband and her children the next day. The women made plans for their vacation to Canada in August. Leslie's brother testified that she had invited him to a barbeque on July 1. Hamburger patties and other picnic items were found in her refrigerator. Although Leslie lived alone with her sons, and her family might not have been aware of all her purchases, they did not think any of her clothes or luggage were missing. She left her rings, paycheck, bankbooks and about $200 in cash. She did not tell any member of her family she was leaving.

■ The corpus delicti need not be established beyond a reasonable doubt. It is sufficient if the facts warrant a reasonable inference that the crime was committed.

Although the Arizona Supreme Court in the case of *State v. Benham*, 58 Ariz. 129, 118 P.2d 91 (1941) stated in dicta that the corpus delicti must be established beyond any question, this standard was rejected in *State v. Romo*, 66 Ariz. 174, 185 P.2d 757 (1947).

In *State v. Hernandez*, 83 Ariz. 279, 320 P.2d 467 (1958), the Supreme Court stated:

"It is generally held that the independent evidence does not have to prove corpus

---

1. Appellant was apparently married to five women at the same time.

delicti beyond a reasonable doubt,· but that some corroboration of the confession or statements is necessary. . . .

From a review of the holdings of the various jurisdictions we believe that the correct rule while expressed differently by the respective courts is that the foundational proof by independent evidence is adequate for the purpose of allowing the use of confession or incriminating statements if it is sufficient, assuming it is true, to warrant a reasonable inference that the crime charged was actually committed by some person. If such preliminary proof has been submitted the confessions or statements may then be used to assist in proving the corpus delicti beyond a reasonable doubt, the degree necessary for conviction." 83 Ariz. at 281–282, 320 P.2d at 468–469.

Arizona has consistently followed *Hernandez. State v. Pineda*, 110 Ariz. 342, 519 P.2d 41 (1974); *State v. Hankey*, 98 Ariz. 104, 402 P.2d 418 (1965); *State v. Weis*, 92 Ariz. 254, 375 P.2d 735 (1962); and *State v. Flores*, 9 Ariz.App. 502, 454 P.2d 172 (1969). We cited *Hernandez* recently in *State v. Turrubiates*, 25 Ariz.App. 234, 542 P.2d 427 (1975), a case involving the death of an infant. There was medical testimony that the child died from a head injury, and that the injury was caused by force applied to the body as opposed to the body falling or bumping with only the force of its own weight. We held this evidence created a reasonable inference that the death was a result of criminal agency, stating:

"There was no requirement that the corpus delicti be established beyond a reasonable doubt prior to the introduction of appellant's confession which might serve the dual purpose of connecting him with the crime and proving the corpus delicti beyond a reasonable doubt." 542 P.2d at 431.

In the case at bar, we find sufficient evidence apart from appellant's statements that the victim was kidnapped.

The evidence reflects that she intended to remain in Tucson. When she left the morning of June 29, she said she would return in 5 or 6 minutes. She apparently took nothing with her although she had cash and other valuables in the apartment. A reasonable inference can be drawn from this evidence that she was forced to leave Pima County. The fact that appellant bought a gun the day before and that it was used to kill the victim three days later supports the inference that armed kidnapping was committed.

When we add appellant's statements, we find sufficient evidence to prove appellant guilty, beyond a reasonable doubt, of kidnapping. Appellant first denied knowing the victim. He claimed he hitch-hiked out of Tucson. Later he admitted leaving Tucson with the victim. He said they had been having an affair for about one month. They talked about going to Illinois via California. Appellant said he decided not to take Leslie with him but the morning they left she called him and begged to be taken. He refused and hung up. A few minutes later he changed his mind and called her. He said he took the pistol (wearing it under his shirt) because his friend, Stewart Vander Galien, who he was to meet in Gila Bend asked him to bring a gun. When they arrived in California, Stewart arranged to buy some heroin in Tijuana, Mexico. According to appellant, he had a "fix" and didn't remember the trip to Tijuana well. He said Stewart raped the victim and shot her with his gun. They drove back to California where Stewart left appellant and the pistol.

Portions of appellant's story were contradicted by other evidence. His wife in Tucson testified that he was in New York and then in the University Hospital in Tucson at the time he was supposed to be having an affair with the victim. Stewart Vander Galien testified that he was in Oregon all summer, never saw Leslie Amos, and did not go to California or Tijuana

with appellant. Appellant told Wilson[2] that he killed Leslie Amos. He said she did not want to go to California with him but he "took her anyway." He acted out the murder for Wilson.

Appellant stated that he was wearing the pistol under his shirt when he left and that he took Leslie despite the fact that she didn't want to go. This evidence is sufficient to support the conviction.

■ Appellant also complains of the following given instruction:

"The term 'armed' means any situation in which a gun was within the immediate control of the offender and available for use in the crime."

He claims this instruction was not supported by the evidence. We disagree. Appellant bought the gun the day before the kidnapping and the victim was killed with it shortly thereafter. Appellant stated that he was wearing the gun at the time he left Tucson with the victim. We do not find the instruction to be a comment on the evidence.

■ Appellant contends he was denied equal protection of the law because he was indicted by a grand jury. One indicted by grand jury is not entitled to the same redetermination of probable cause that he would be entitled to if proceeded against by information. See, Rule 12.9, Rules of Criminal Procedure, 17 A.R.S., and *State v. Superior Court*, 26 Ariz.App. 482, 549 P.2d 577 (filed May 13, 1976). In *State v. Bojorquez*, 111 Ariz. 549, 535 P.2d 6 (1975), a similar equal protection argument was presented, namely that because a defendant has a right to counsel, subpoena power, confrontation, notice of charges, and to testify on his own behalf at a preliminary hearing which he does not have with a grand jury, an indicted defendant has been denied equal protection. The Supreme Court rejected this argument stating:

". . . the indictment method by a grand jury is recognized as a fundamental element of the accusatory process under the United States and Arizona Constitutions." 111 Ariz. at 553, 535 P.2d at 10.

Also see *State v. Cousino*, 18 Ariz.App. 158, 500 P.2d 1146 (1972). *Bojorquez* mandates a conclusion that equal protection has not been violated in the case at bar.

■ Appellant next claims he was denied a fair trial because of the following colloquy during voir dire of the jury:

"MRS. OOSTERHOFF: Did Mr. Hinkle rent a car for this?

THE COURT: You are Mrs. Oosterhoff. Did he rent a car?

MRS. OOSTERHOFF: Did he rent a car from Avis?

THE COURT: Is there any evidence concerning a car rental?

MRS. OOSTERHOFF: The name is very familiar to me. That's why I asked.

THE COURT: Not that I am aware of. Mr. Hantman?

MR. HANTMAN: I don't believe so, Your Honor."

Appellant claims that this statement indicates that Mrs. Oosterhoff had already decided that appellant was guilty. At the time, counsel requested only that this juror be examined as to her beliefs on the presumption of innocence. The court did this.

"THE COURT: . . . We talked early in this examination about the fact that the defendant is presumed to be innocent unless and until his guilt is proven beyond a reasonable doubt. Now, that is not just an idle statement. That's the law. Can you follow that law? You would have no problem with it?

MRS. OOSTERHOFF: No."

2. Wilson was appellant's cellmate, but this fact was not revealed to the jury.

We find this questioning sufficient. The trial court did not abuse its discretion in refusing to grant a mistrial.

■ Appellant also claims error in the trial court's refusal to question a juror who was overheard complaining of trial delays. We find no abuse of discretion. ·See, *State v. Benge*, 110 Ariz. 473, 520 P.2d 843 (1974).

■ Appellant contends the court erred in allowing Joe Covington to testify that appellant admitted purchasing a pistol in Tucson on June 28, 1974. The fact that Covington was an Assistant United States Attorney and that appellant pled guilty to federal firearm charges was not disclosed to the jury. We find no denial of the right of confrontation. Appellant had an opportunity to fully cross-examine, but made a strategic choice not to fully question the witness. We find no abuse of discretion in allowing this testimony.

■ Appellant claims the court erred in allowing testimony as to his use of drugs. Appellant's addiction to heroin was his excuse for not helping Leslie Amos when Stewart raped and killed her. It could not be separated from the story he told the police. In light of this, the few other references to his drug use were harmless beyond a reasonable doubt.

Appellant next complains of a reference to the victim's broken neck. The trial court had prohibited such testimony. However, appellant's attorney did not object, so this issue was not preserved for appeal. *State v. Miller*, 112 Ariz. 68, 537 P.2d 965 (1975).

■ Appellant contends the trial court abused its discretion in refusing to preclude the testimony of three witnesses who were not disclosed until the day before the trial, and in allowing the state to introduce photographs of the apartment complex that were not disclosed. Appellant's assertion that *State v. Scott*, 24 Ariz.App. 203, 537 P.2d 40 (1975), requires preclusion is without merit. *Scott* merely held that the trial court did not abuse its discretion in ordering preclusion when lack

of good faith could justifiably be inferred. In *State v. Fenton*, 21 Ariz.App. 193, 517 P.2d 1086 (1974), and *State v. Birdsall*, 23 Ariz.App. 454, 533 P.2d 1191 (1975), we recognized that the trial court has broad discretion in determining what sanction, if any, to impose. We find no abuse of discretion in the instant case.

■ Appellant complains of the following statement made by the prosecutor in. closing argument:

"Defense counsel is absolutely right. He doesn't have to present one witness who can come in here and say, 'I saw—I saw the defendant with Leslie Amos and they were sitting down having a cup of coffee.' He doesn't have to do it.

But I submit to you if he had a witness to say it, they would have been here."

If the statement focuses on the defendant's failure to take the stand it is error. In *State v. Karstetter*, 110 Ariz. 539, 521 P.2d 626 (1974), the prosecutor stated:

" 'There are only two people who know what happened on October 15, 1972 at the time this woman died. One of them is dead. . . .

\*　\*　\*　\*　\*　\*

The only evidence we have from anyone regarding what exactly happened between these two is from the defendant as he gave it to the police and as he gave it to his psychologist and his psychiatrist . . . . ' " 110 Ariz. at 544, 521 P.2d at 631.

The Arizona Supreme Court said, "The prosecutor's statement was not actually a comment on defendant's failure to take the stand." 110 Ariz. at 544, 521 P.2d at 631.

The comment in the case at bar refers to the defendant's failure to produce witnesses rather than his failure to take the stand. The trial judge reserved ruling on the objection until the jury had begun deliberations. Had he heard the objection at the time it was made he could have instructed the jury to disregard the comment. The trial judge denied the defense motion for a mistrial on the basis that he covered

the matter sufficiently in his instruction to the jury. We find no abuse of discretion.

■ Appellant claims it was error to introduce certain statements of the decedent. The victim's son testified that after receiving the phone call she stated, " 'I will just be right back.' " and "She was going to take a man down the street in the car." This testimony was introduced to show that the victim did not leave willingly with appellant. It was introduced not to prove the truth of the statement, but to show her state of mind. Since the victim's mental state was in issue, statements reflecting her state of mind were admissible. McCormick, Law of Evidence § 249 (1972); Udall, Arizona Law of Evidence § 173 (1960). In *State v. Izzo*, 94 Ariz. 226, 383 P.2d 116 (1963), a witness was allowed to testify that the deceased did not go home the night before she was murdered. This was allowed to show the deceased's fear of her husband. The Supreme Court stated:

"Where the state of mind or feelings are an issue, evidence of actions and declarations at or near the time may be indicative thereof." 94 Ariz. at 229, 383 P.2d at 118.

The other statements objected to are those concerning the victim's future plans. They were admissible for the same reasons. The defense was consent. Appellant told the police he and the victim had been planning to go to Illinois together. Therefore, the victim's state of mind was material. Statements she made from which an intent to remain in Tucson could be inferred were material and admissible. They were not hearsay because they were not offered to prove the truth of the statement, but rather to show the victim's state of mind.

■ Appellant claims it was error for the court to allow the introduction of evidence that the victim was killed. This fact was, of course, highly prejudicial, but the prejudice was outweighed by the probative value of the evidence. The state is allowed to complete the story of the crime and to explain why the victim was not called to testify. In *State v. Lockner*, 20 Ariz.App. 367, 513 P.2d 374 (1973), Division One of this court stated:

"Arizona is committed to the 'complete story' in the trial of criminal cases even though a disclosure of portions of the story, of the surrounding facts and circumstances, might lead the jury to believe that the defendant had committed criminal acts other than the one for which he is on trial." 20 Ariz.App. at 372, 513 P.2d at 379.

The murder also connects appellant to the crime and leads to the inference that the victim was kidnapped.

■ Appellant's last contention is that the court erred in instructing the jury that his contradictory statements, if any, might be considered as tending to prove consciousness of guilt, but were insufficient alone to prove guilt. We rejected this same contention in *State v. Travis*, 26 Ariz.App. 24, 545 P.2d 986 (1976), and approved this instruction.

Affirmed.

HOWARD, C. J., and KRUCKER, J., concur.