SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| KENNETH PHILLIPS, | ) Arizona Supreme Court |
| | ) No. CV-03-0351-PR |
| Petitioner, | ) |
| | ) Court of Appeals |
| v. | ) Division One |
| | ) No. 1 CA-SA 03-0201 |
| THE HONORABLE LOUIS ARANETA, | ) |
| JUDGE OF THE SUPERIOR COURT OF | ) Maricopa County Superior |
| THE STATE OF ARIZONA, in and for | ) Court |
| the County of Maricopa, | ) No. CR 02-007255 |
| | ) |
| Respondent Judge, | ) |
| | ) |
| STATE OF ARIZONA, | ) |
| | ) **O P I N I O N** |
| Real Party in Interest. | ) |
| | ) |
| _____ | ) |

Special Action from Superior Court of Maricopa County
No. CR 02-007255
The Honorable Louis A. Araneta
**VACATED; REMANDED**

_____

Susan Sherwin, Maricopa County Legal Advocate          Phoenix
     by   Maria L. Schaffer, Deputy Legal Advocate
Attorneys for Kenneth Phillips

Richard M. Romley, Maricopa County Attorney          Phoenix
     by   Paul J. McMurdie, Deputy County Attorney
     and  Catherine M. Hughes, Deputy County Attorney
Attorneys for the State of Arizona

_____

M c G R E G O R, Vice Chief Justice

¶1      The  State  has  charged  Kenneth  Phillips  with  first-

degree  murder  and  sexual  assault  and  is  seeking  the  death

penalty.  This case has not yet proceeded to trial.  We granted

review to consider whether the trial court judge abused his discretion (1) by requiring the defendant to submit to a mental health examination by the State mental health expert after the defendant notified the State that he will call mental health experts to testify at the penalty phase of his trial if the jury returns a guilty verdict or (2) by ordering that, if the defendant does not cooperate with the State's mental health examination, the judge will preclude the defendant's mental health-related mitigation evidence. We exercise jurisdiction pursuant to Article VI, Section 5.3 of the Arizona Constitution and Arizona Revised Statutes (A.R.S.) § 12-120.24 (2003).

## I.

¶2      Phillips notified the State that he intends to call Dr. Anthony Dekker, an addictionologist, and Dr. Marc S. Walter, a neuropsychologist, to testify during the penalty phase of his trial. Phillips also provided the experts' written reports to the State.[1] The State then moved to require Phillips to submit to a mental health examination by a State-selected expert. The respondent judge granted the State's motion, and Phillips informed the judge that he would not submit to the evaluation.

---

[1] The Arizona Rules of Criminal Procedure require that, in a capital case, the defendant shall provide to the prosecutor "[t]he names and addresses of any experts whom the defendant intends to call during the aggravation and penalty hearings

**¶3**        The judge then considered the appropriate sanction for Phillips' refusal.  After balancing "the immense gravity of the death penalty sought by the State against the fair opportunity to rebut mitigation from the Defendant's experts," *State v. Phillips*, CR 2002-007255 (Ariz. Super. Ct. Aug. 18, 2003) (minute entry), the judge issued an order precluding Phillips from calling Drs. Dekker and Walters at the penalty phase. Phillips filed a special action petition in the court of appeals, which declined jurisdiction.  We granted review to address these recurring issues of statewide importance.  *See* ARCAP 23(c)(3).

## II.

**¶4**        To determine whether the trial judge abused his discretion, we must balance the State's right to rebut the defendant's mitigation evidence, as assured by A.R.S. § 13-703.D (Supp. 2003), with the defendant's right to be free from self-incrimination, as guaranteed by the Fifth Amendment to the United States Constitution.  U.S. Const. amend. V; *see also* Ariz. Const. art. 2, § 10.

_____

together with any reports prepared excluding the defendant's statements." Ariz. R. Crim. P. 15.2(h)(1)(c).

3

## A.

¶5        Arizona's statutory sentencing procedures permit both the state and a defendant to rebut any information received at the aggravation or penalty phase of a capital proceeding:

> Evidence that is admitted at the trial and that relates to any aggravating or mitigating circumstances shall be deemed admitted as evidence at a sentencing proceeding if the trier of fact considering that evidence is the same trier of fact that determined the defendant's guilt.  The prosecution and the defendant shall be permitted to rebut any information received at the aggravation or penalty phase of the sentencing proceeding and shall be given fair opportunity to present argument as to whether the information is sufficient to establish the existence of any of the circumstances included in subsections F and G of this section.

A.R.S. § 13-703.D.

¶6        The State argues that this statute requires the court to order Phillips to submit to an examination by the State's expert witness because that is the only course that will allow the State to fully rebut Phillips' mitigation evidence. In response, Phillips contends that the Fifth Amendment grants him an absolute right to refuse to submit to an examination by an expert chosen by the court or the State.

¶7        The Fifth Amendment commands that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V.  As the United States Supreme Court held in *Estelle v. Smith*, the right against self-incrimination

4

applies to statements made during court-ordered mental examinations related to the penalty as well as the guilt phase of a trial:

> [T]he availability of the [Fifth Amendment] privilege does not turn upon the type of proceeding in which its protection is invoked, but upon the nature of the statement or admission and the exposure which it invites. . . . Just as the Fifth Amendment prevents a criminal defendant from being made the deluded instrument of his own conviction it protects him as well from being made the deluded instrument of his own execution.

451 U.S. 454, 462 (1981) (internal quotations and citations omitted). Moreover, statements uttered by a defendant in the context of a court-ordered psychiatric inquiry must be "given freely and voluntarily without any compelling influences and, as such, [may] be used [by] the State . . . at the penalty phase only if [the defendant] ha[s] been apprised of his rights and ha[s] knowingly decided to waive them." *Id*. at 469 (internal quotations omitted).

¶8     When a defendant places his mental condition at issue, however, he generally "opens the door" to an examination by an expert selected by the state or the court. We previously have considered the right of the state to require a defendant to submit to a mental health examination for use during the *guilt* phase of a capital trial. In *State v. Schackart*, 175 Ariz. 494, 499, 858 P.2d 639, 644 (1993), for example, defense counsel indicated that he planned to call a psychiatrist to testify

5

regarding the defendant's mental state at the time of the killing. The State then moved to have the defendant examined by a mental health professional appointed pursuant to Rule 11 of the Arizona Rules of Criminal Procedure.[2] *Id*. When the trial court appointed a psychiatrist and ordered the defendant to submit to an examination with this psychiatrist, the defendant objected, arguing that ordering him to submit to such an examination violated his right to be free from compelled self-incrimination. *Id*. at 500, 858 P.2d at 645. This court held that "a defendant who places his or her mental condition in issue and gives notice of an intention to rely on psychiatric testimony has 'opened the door' to an examination by an expert appointed on motion of the state." *Id*. To hold otherwise, we

---

[2] Rule 11.2(a) provides:

> At any time after an information or complaint is filed or indictment returned, any party may request in writing, or the court on its own motion may order, an examination to determine whether a defendant is competent to stand trial, or to investigate the defendant's mental condition at the time of the offense. The motion shall state the facts upon which the mental examination is sought. On the motion of or with the consent of the defendant, the court may order a screening examination for a guilty except insane plea pursuant to A.R.S. § 13-502 to be conducted by the mental health expert. In a capital case, the court shall order the defendant to undergo mental health examinations as required under A.R.S. § 13-703.02 and 13-703.03.

Ariz. R. Crim. P. 11.2(a).

6

explained, "would deprive the state of the only adequate means to contest the conclusions of a defense psychiatric expert." *Id.*

¶9    Phillips argues that *Schackart* does not apply because the defendant there wished to use expert testimony to prove lack of intent, rather than for mitigation purposes. In our view, however, the same considerations apply in both contexts. In both instances, requiring a defendant to submit to a court-ordered mental examination often provides the only way to maintain a "fair state-individual balance," *id.*, and to ensure the state a meaningful opportunity to rebut the defendant's expert testimony. We hold, therefore, that once a defendant notifies the state that he intends to place his mental condition at issue during the penalty phase of a capital trial, a trial judge has discretion to order the defendant to submit to a mental examination by an expert chosen by the state or the court.

**B.**

¶10    Phillips next asserts that, if he must undergo a court-ordered mental health examination, the results of such an examination should not be disclosed to the State until and unless the jury returns a verdict of guilty. Phillips argues that no procedural safeguards exist to prevent the State from misusing the results of an examination by a State expert. He is

7

particularly concerned that if he submits to an examination by the State's mental health expert, the State either will use his statements during the guilt phase or will misuse the results during the sentencing phase of the trial. To prevent such misuse from occurring, Phillips urges, this court should require that any report generated by an examination of him by a government expert be filed under seal and that the result of any examination be released to the State only in the event that the jury reaches a guilty verdict and Phillips confirms his intent to offer mental health evidence in mitigation.

¶11     A number of federal district courts have imposed such a requirement. For example, in *United States v. Edelin*, 134 F. Supp. 2d 45 (D.D.C. 2001), the district court ordered that the report of the government mental health expert be sealed and not be discussed with either government or defense lawyers until after the guilt phase of the trial. *Id*. at 58–59. The court further ordered that, if the defendant gave notice, within two days of the guilty verdict, of his continued intent to use mental health information at sentencing, the court would release the sealed reports. *Id*. at 59; *see also United States v. Minerd*, 197 F. Supp. 2d 272, 277 (W.D. Pa. 2002) (ordering that the results of any examination by the government's expert be filed under seal and released only in the event that the jury reaches a guilty verdict and only after the defendant confirms

8

his intention to offer mental health evidence in mitigation); *United States v. Beckford*, 962 F. Supp. 748, 764 (E.D. Va. 1997) (same); *United States v. Vest*, 905 F. Supp. 651, 654 (W.D. Mo. 1995) (same).

**¶12** Phillips encourages this court to adopt a similar "seal and gag" procedure. While we agree that a trial judge, in ordering a defendant to submit to a mental health examination by an expert of the state's or court's choosing, must protect the defendant's privilege against self-incrimination, we decline to require the "seal and gag" procedure required by federal law.[3]

---

[3] Rule 12.2(b) of the Federal Rules of Criminal Procedure provides:

> If a defendant intends to introduce expert evidence relating to a mental disease or defect or any other mental condition of the defendant bearing on either (1) the issue of guilt or (2) the issue of punishment in a capital case, the defendant must—within the time provided for filing a pretrial motion or at any later time the court sets—notify an attorney for the government in writing of this intention and file a copy of the notice with the clerk. The court may, for good cause, allow the defendant to file the notice late, grant the parties additional trial-preparation time, or make other appropriate orders.

Fed. R. Crim. P. 12.2(b).

Rule 12.2(c) of the Federal Rules of Criminal Procedure provides:

> (1) (A) The court may order the defendant to submit to a competency exam under 18 U.S.C. § 4241.

9

We agree with the State that such a procedure could severely encumber the State's ability to rebut the defendant's mental health-related mitigation evidence.  As the State points out, the evaluation of a defendant is often the "starting point," rather than the "main event," in determining the mitigating impact of an individual's mental health status.  After an examination, an expert frequently requests additional testing or documentation to assist in forming an opinion, and the prosecution may need to investigate the accuracy of a defendant's assertions.  Such post-examination investigation may be crucial to an expert's ability to accurately assess and diagnose a defendant's mental health.  Furthermore, Arizona's

_____

> (B) If the defendant provides notice under Rule 12.2(a), the court must, upon the government's motion, order the defendant to be examined under 18 U.S.C. § 4242.  If the defendant provides notice under Rule 12.2(b) the court may, upon the government's motion, order the defendant to be examined under procedures ordered by the court.
>
> (2) The results and reports of any examination conducted solely under Rule 12.2(c)(1) after notice under Rule 12.2(b)(2) must be sealed and must not be disclosed to any attorney for the government or the defendant unless the defendant is found guilty of one or more capital crimes and the defendant confirms an intent to offer during sentencing proceedings expert evidence on mental condition.

Fed. R. Crim. P. 12.2(c).

10

sentencing statutes direct that "[t]he penalty phase shall be held *immediately* after the . . . aggravation phase . . . ." A.R.S. § 13-703.01.F (emphasis added). As a practical matter, the follow-up work often required after an initial mental health examination cannot be performed during the short recess before the penalty phase begins.

¶13    We also doubt that most defendants would benefit from a procedure in which neither the defendant nor his counsel could examine the report of the state's expert witness until immediately before the penalty phase of the trial. Defense counsel, as much as the prosecutor, generally needs time to prepare to meet the opinions advanced by the other party's expert witness; defense counsel, as much as the prosecutor, generally requires substantial time to follow up on questions raised during the mental health examination. For these reasons, we decline to require that any report generated by an examination of the defendant by a government expert be filed under seal or that the result of any examination be released to the government only in the event that the jury reaches a guilty verdict and the defendant confirms his intent to offer mental health evidence in mitigation.[4]

---

[4]    Despite the considerable problems caused by a "seal and gag" order, a trial judge has discretion to consider that

11

¶14     The trial judge, however, must assure that an order subjecting a defendant to a mental health examination protects the defendant's privilege against self-incrimination. The judge must fashion an order that ensures that no statement made by the defendant during the course of the examination, no testimony by the mental health expert based upon the defendant's statement, and no other fruits of the defendant's statements may be used by the prosecution or admitted into evidence against the defendant except on those issues on which the defendant introduces expert testimony during the penalty phase of the trial. We leave to the trial judge the decision, in the first instance, as to which conditions must be imposed to ensure that no statements made by a defendant will be used improperly during either the guilt or the penalty phase of the trial.

## III.

¶15     We now turn to the issue of whether a trial court may preclude a defendant from presenting mental health-related mitigation evidence at the penalty phase of his capital case when the defendant refuses to undergo an evaluation by the state's expert. The State argues that preclusion should always be the penalty for a defendant's refusal to submit to an

_____

procedure in the rare case in which such an order would be appropriate.

12

evaluation by the State's expert. Phillips, in contrast, asserts that preclusion is never an appropriate sanction. We adopt neither of these extreme positions. We hold that a trial judge, in the exercise of her discretion, can impose an appropriate sanction, including preclusion, if a defendant refuses to cooperate with a court-ordered mental health examination.

¶16    Although the Arizona Rules of Criminal Procedure do not directly address the sanction to apply in this instance, the Rules do allow preclusion as a sanction. Rule 15.7 provides that a court may impose a sanction of preclusion if a party fails to make a disclosure required by Rule 15. Ariz. R. Crim. P. 15.7(a)(1). Similarly, A.R.S. § 13-3993 (2001), which pertains to examinations of defendants who have invoked an insanity defense, directs a court to preclude the defendant from offering expert testimony of his mental state if he refuses to be examined by the state's expert.[5] Phillips' refusal to submit to the court-ordered examination in this instance is closely analogous to the situations addressed in those provisions. Reasoning from them, and drawing upon the court's inherent

---

[5]    "If a defendant in a criminal prosecution refuses to be examined by the state's mental health experts, the court shall preclude the defendant from offering expert evidence of the defendant's mental state at the time of the alleged crime." A.R.S. § 13-3993.B (2001).

13

power, a trial court clearly has discretion to preclude a defendant's expert evidence at the penalty phase of a trial if the defendant refuses to submit to a court-ordered evaluation.

¶17        Phillips asserts that, even if the court has authority to preclude expert evidence, the court should instead impose a less onerous sanction than preclusion as a penalty for an accused's refusal to comply with a court-ordered examination by the state's expert.  He suggests that the court could, for example, permit the state to offer evidence that the accused refused to comply with its expert's evaluation.  *See State v. Schantz*, 98 Ariz. 200, 214, 403 P.2d 521, 530 (1965).  We doubt, however, that such a procedure generally would give the state a "fair opportunity" to refute a defendant's claim of mental impairment, as required by A.R.S. § 13-703.D.  The procedure would entirely deprive the state of any ability to present expert testimony supporting a view contrary to that espoused by the expert testimony presented on behalf of a defendant. Furthermore, given that a defendant's right to remain silent includes the right not to be questioned about the exercise of that right, *Doyle v. Ohio*, 426 U.S. 610, 618-19 (1976); *State v. Riggs*, 189 Ariz. 327, 330, 942 P.2d 1159, 1162 (1997), permitting the state to offer evidence that the defendant refused to comply with a court-ordered expert evaluation could pose constitutional problems that we need not address today.

14

¶18 Alternatively, Phillips suggests, the trial court could permit the state's expert to watch and listen to the relevant testimony and then render an opinion thereon. *See Burgunder v. State*, 55 Ariz. 411, 427, 103 P.2d 256, 263 (1940). The State finds this suggestion untenable, and we agree. Under the American Psychological Association's Code of Ethics, "psychologists provide opinions of the psychological characteristics of individuals only after they have conducted an examination of the individuals adequate to support their statements or conclusions." Ethical Standard 9.01(b) of the *Ethical Principles of Psychologists and Code of Conduct* (2002). Because of this requirement, the State argues, it is unlikely that an expert would consent to testify and offer a professional opinion based simply on hearing the testimony of the defendant's expert during the penalty phase of the trial. The State further points out that, even if it could find an expert willing to testify under such circumstances, on cross-examination the defendant could severely undermine the credibility of an expert who had neither examined the defendant nor administered any psychological testing. Moreover, the prosecution would have been deprived of any opportunity to investigate claims made during the course of a mental health examination. We agree with the State that this alternative does not provide an adequate opportunity to rebut Phillips' expert testimony.

15

¶19 A trial judge may consider whether, in a particular case, a sanction other than preclusion adequately protects the right of the state to rebut a defendant's testimony. The judge, however, also has discretion to preclude the use of the defendant's expert testimony related to mental health issues raised by the defendant in mitigation.

**IV.**

¶20 For the foregoing reasons, we hold that the trial judge did not abuse his discretion by ordering Phillips to submit to a mental health evaluation by the State's expert. We also hold that the trial judge can preclude Phillips from presenting mental health-related mitigation evidence if he refuses to comply with an order directing him to cooperate with the State's mental health evaluation.

¶21 The order directing Phillips to submit to the court-ordered mental health examination did not, however, expressly protect Phillips' privilege against self-incrimination. We therefore vacate the order of the trial court and remand this matter to the trial court for further proceedings consistent with this opinion.

_____

Ruth V. McGregor, Vice Chief Justice

CONCURRING:


_____
Charles E. Jones, Chief Justice


_____
Rebecca White Berch, Justice


_____
Michael D. Ryan, Justice


_____
Andrew D. Hurwitz, Justice